UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

MARIA NERISA CARINGAL MAGBOJOS,
individually and on behalf of all others similarly                :
situated,

                                                      :        1:18 Civ. 3520 (ARR) (JO)
                         Plaintiff,

                                                      :

                   -vs-                         :        **AMENDED COMPLAINT**

GRANDISON MANAGEMENT, INC.,            :        Plaintiff Demands a Jury Trial
REHAB SYNERGY PT, P.C., and
BASILIO E. LOPEZ,                        :

                        Defendants.      :
--------------------------------------------------------------X

       Plaintiff MARIA NERISA CARINGAL MAGBOJOS, by her undersigned attorneys, on

behalf of herself and all others similarly situated, as and for her complaint against the defendants,

alleges upon knowledge as to herself and her own actions and upon information and belief as to

all other matters as follows:

       1.      This is an action for damages and injunctive relief for violations of the

Trafficking Victims Protection Act, (TVPA), 18 U.S.C. §§ 1589, *et seq.*, for failure to pay

overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*,

and the New York Labor Law, N.Y. Lab. L. §§ 190, *et seq.*, for unlawful retaliation in violation

of the federal False Claims Act, 31 U.S.C. § 3730(h), the New York False Claims Act, N.Y.

State Fin. L. § 191, and the New York Labor Law, for breach of the parties' employment

contract, and for a declaratory judgment that a $30,000.00 indenture and a nationwide, two-year

non-compete clause in defendant Grandison Management's standard employment contract are

unenforceable under the TVPA, the 13th Amendment to the United States Constitution, the Anti-

Peonage Law, 42 U.S.C. § 1994, and New York common law.

2.      The TVPA and declaratory judgment claims are brought as a class action, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of all healthcare workers who worked for defendant Grandison Management under employment contracts containing non-compete and so-called $30,000 "liquidated damages" clauses at any time since August 10, 2008.

3.      Plaintiff is a physical therapist who was recruited in the Philippines to work for the defendants in this District under a contract of indentured servitude. The contract contained a so-called "liquidated damages" clause that required her to pay or work off a $30,000 indenture before she would be allowed to stop working for the defendants. The contract also contained non-compete provisions that purport to prohibit her from practicing her profession anywhere in the United States for two years.

4.      After plaintiff arrived in this country on an H-1b non-immigrant visa, the defendants put her to work at a chiropractor's clinic where she was pressured to provide physical therapy services and treatment to an excessive number of patients, complete billing records that did not accurately reflect the amount of time she actually spent with patients, and work off-the-clock without compensation.

5.      When plaintiff complained about risks to patient health and safety, false billing practices, and the failure to pay her for all hours worked, defendant Grandison Management retaliated against her by refusing to approve a request for time off to attend her own wedding and by threatening to transfer her to a remote location in Upstate New York far from her fiancé unless she dropped her claims and agreed to continue working for them. Defendant Grandison Management also threatened plaintiff with serious harm and abusive legal actions if she tried to stop working for the defendants, including by commencing legal actions against plaintiff to

collect a $30,000.00 indenture in the employment contract and to enforce non-compete clauses prohibiting her from practicing her profession for two years anywhere in the United States.

6.      Defendants' conduct towards plaintiff was part of a pattern and practice used to coerce a large number of foreign healthcare workers to continue working for Grandison Management and its clients.  Upon information and belief, defendant Grandison Management used the same standard employment contract containing nationwide non-compete clauses and indentures, together with threats of serious harm and abusive legal actions, against all of its foreign healthcare workers.

7.      Plaintiff therefore seeks a declaratory judgment that the $30,000.00 indenture and two-year, nationwide non-compete clauses in Grandison Management's standard employment contract are unenforceable, a permanent injunction prohibiting defendants from enforcing or threatening to enforce the indenture or non-compete provisions in their employment contracts, together with compensatory and punitive damages, and an award of reasonable attorneys' fees, costs, and disbursements.

## Jurisdiction and Venue

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1595(a) (TVPA), 29 U.S.C. § 216(b) (FLSA), and 31 U.S.C. § 3732 (False Claims Act).  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy as the federal law claims.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this District.

## The Parties

10.     Plaintiff MARIA NERISA CARINGAL MAGBOJOS ("Plaintiff") is a physical therapist licensed to practice in the State of New York and a former employee of the defendants. She is a citizen of the Republic of the Philippines and resides in Queens County, New York.

11.     Defendant GRANDISON MANAGEMENT, INC. ("Grandison Management") is a corporation organized under the laws of the State of New York with a principal place of business at 1413 38th Street, Brooklyn, New York 11218.  At all times relevant to this complaint, Grandison Management was plaintiff's employer within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(d), and the New York Labor Law, N.Y. Lab. L. § 190.

12.     Defendant REHAB SYNERGY PT, P.C. ("Rehab Synergy") is a professional corporation organized under the laws of the State of New York with a principal place of business at 3530 64th Street, Woodside, New York 11377.  At all times relevant to this complaint, Rehab Synergy was plaintiff's joint employer within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(d), and the New York Labor Law, N.Y. Lab. L. § 190.

13.     Defendant BASILIO E. LOPEZ ("Mr. Lopez") is a physical therapist licensed to practice in the State of New York.  Upon information and belief, he resides at 18003 90th Avenue, Jamaica, New York 11432.  At all times relevant to this complaint, Mr. Lopez was plaintiff's joint employer within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(d), and the New York Labor Law, N.Y. Lab. L. § 190.

## Facts Common to All Claims

14.      Defendant Grandison Management recruited plaintiff in the Philippines to work as a physical therapist for the defendants in this District.

15.     Plaintiff executed an employment contract with defendant Grandison Management.

16.     The employment contract provides that Grandison Management is plaintiff's employer.

17.     The employment contract provides that Grandison Management must petition the U.S. Government to provide plaintiff with a non-immigrant working visa under the H-1b visa program.

18.     The employment contract provides that Grandison Management must employ plaintiff full time, which is defined as 35 hours per week.

19.     Under the immigration laws, an employer who petitions for an H-1b visa must employ the worker full time for at least 35 hours per week.  The employer is not permitted to "bench" an H-1b worker when the employer does not have enough work for the worker.  The employer must pay the H-1b worker a full-time wage whether or not the employer has sufficient work to justify employing the worker full time.

20.     The employment contract provides that Grandison Management must pay overtime wages "in accordance with the laws of the United States government and the state where the Employee performs services."

21.     The employment contract includes a $30,000.00 indenture.  It provides that plaintiff must either pay $30,000.00 or work off the $30,000.00 debt over a period of three years before she can stop working for Grandison Management and its clients.

**A.  Defendants Were Plaintiff's Joint Employers**

22.     Grandison Management assigned plaintiff to work as a physical therapist for defendants Basilio E. Lopez and Rehab Synergy PT, P.C.

23.     Plaintiff performed work which simultaneously benefitted defendants Grandison Management, Mr. Lopez, and Rehab Synergy.

24.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy each had the power to hire and fire plaintiff from her employment with Mr. Lopez and Rehab Synergy.

25.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy each had the power to supervise and control plaintiff's work schedules and conditions of employment.

26.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy jointly had the power to determine the rate and method of payment of plaintiff's wages.

27.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy each maintained records of plaintiff's employment.

28.     The premises and equipment of defendants Mr. Lopez and Rehab Synergy were used for plaintiff's work.

29.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy jointly had the power to shift plaintiff's employment from one joint employer to another.

30.     Plaintiff performed a job function that was integral to the businesses of defendants Grandison Management, Mr. Lopez, and Rehab Synergy.

31.     Plaintiff's job responsibilities could pass from defendant Grandison Management to defendants Mr. Lopez and Rehab Synergy without material changes.

32.     Plaintiff's work was supervised by defendants Grandison Management, Mr. Lopez and Rehab Synergy.

33.     Plaintiff worked exclusively for defendants Grandison Management, Mr. Lopez, and Rehab Synergy.

**B.  Defendants Pressured Plaintiff to Provide Sub-Standard Care to Patients**

34.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy required plaintiff to provide physical therapy services and treatment to an excessive number of patients without any assistance from other physical therapists or physical therapy aides.

35.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy required plaintiff to provide physical therapy services and treatment to an average of 120 to 130 patients during a four-day workweek.

36.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy required plaintiff to provide physical therapy services and treatment to an average of 30 to 35 patients during an eight-hour work day.

37.     Plaintiff had less than 16 minutes per patient to provide physical therapy services and treatment on an average work day.

38.     On high-volume days, defendants Grandison Management, Mr. Lopez, and Rehab Synergy frequently required plaintiff to provide physical therapy services and treatment to between 35 and 40 patients in an eight-hour day.

39.     Plaintiff had less than 14 minutes per patient to provide physical therapy services and treatment on high-volume days.

40.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy required plaintiff to use forms that record treatment times in intervals that do not match the amount of time plaintiff actually spent with patients.

41.     The forms were used to bill health insurance programs including Medicare and Medicaid.

42.     Plaintiff complained to defendants Grandison Management, Mr. Lopez, and Rehab Synergy that the high volume of patients raised serious risks of sub-standard patient care.

43.     Plaintiff complained to defendants Grandison Management, Mr. Lopez, and Rehab Synergy that it was improper to use forms stating physical therapy services and treatment were provided in 45-minute intervals when she spent less than 16 minutes with each patient.

44.     Plaintiff complained to defendants Grandison Management, Mr. Lopez, and Rehab Synergy that she was constantly worried about risks to the health and safety of her patients because the pressure to provide physical therapy services and treatments to an excessive number of patients created risks of sub-standard care.

45.     Plaintiff complained to defendants Grandison Management, Mr. Lopez, and Rehab Synergy that she was constantly worried about her professional license because of pressure to provide sub-standard care and to engage in fraudulent time and billing practices.

46.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy did not take action to correct the risks of sub-standard care and false billing.

47.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy refused to engage the services of additional physical therapists or physical therapy aides to provide adequate care to the high volume of patients.

48.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy refused to change the forms that resulted in the submission of false claims to health insurance programs including Medicare and Medicaid.

**C.  Defendants Provided Inadequate Breaks and
    Required Plaintiff to Work Off-the-Clock**

49.     Providing physical therapy services and treatment to patients is physically demanding and exhausting work.

8

50.    Plaintiff was promised a one-hour lunch break and other breaks during the day.

51.    A one-hour lunch break and other breaks during the day were necessary to ensure that plaintiff was rested enough to provide adequate care and treatment to every patient.

52.    Due to the excessive number of patients, plaintiff was not given a full one-hour lunch break.  On some days, plaintiff was given only 15 minutes or less for lunch.

53.    Due to the excessive number of patients, plaintiff was rarely given any other breaks during the work day.

54.    The defendants routinely made deductions from plaintiff's paychecks for a hypothetical "lunch break," even though plaintiff's time records show that she rarely took a full hour for lunch and often took no break at all.

55.    Defendants Grandison Management, Mr. Lopez, and Rehab Synergy required plaintiff to provide physical therapy services and treatment to patients after regular business hours.

56.    Defendants Grandison Management, Mr. Lopez, and Rehab Synergy failed to pay plaintiff for all the extra time required to provide physical therapy services and treatment to patients after regular business hours.

57.    Defendants Grandison Management, Mr. Lopez, and Rehab Synergy required plaintiff to prepare written, detailed treatment notes for each patient every day.

58.    Treatment notes are essential to the proper care and treatment of patients.

59.    Treatment notes are essential to support claims for reimbursement from health insurance programs including Medicare and Medicaid.

60.    Treatment notes must be completed at the time treatment is provided or shortly thereafter.

61.     Given the excessive numbers of patients plaintiff was required to see during her workdays, she was required to prepare treatment notes after regular working hours.

62.     Plaintiff worked an extra 1-2 hours each workday preparing treatment notes, including on the following dates:  June 29, 2018; June 30, 2018; July 1, 2018; July 5, 2018; July 7, 2018; July 8, 2018; July 12, 2018; July 15, 2018; July 19, 2018; July 21, 2018; July 24, 2018; July 26, 2018; July 27, 2018; July 29, 2018; July 30, 2018; July 31, 2018.

63.     The additional hours plaintiff worked preparing treatment notes after regular working hours resulted in plaintiff working more than 40 hours per workweek and more than 80 hours per two consecutive workweeks.

64.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy failed to pay plaintiff for all the extra hours she worked to prepare treatment notes.

65.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy failed to pay plaintiff at the required overtime rate of compensation for the hours in excess of 40 per workweek that she was required to work.

66.     Defendants Grandison Management, Mr. Lopez, and Rehab Synergy failed to pay plaintiff at the required overtime rate of compensation for the hours in excess of 80 per two consecutive workweeks that she was required to work.

**D. Defendant Grandison Management Refused to Cure its Breaches of the Employment Contract**

67.     On April 20, 2018, plaintiff sent defendant Grandison Management written notice that it had breached the employment contract by: (a) requiring plaintiff to treat an excessive number of patients and to use forms that record treatment times in intervals that do not match the amount of time she actually spent with patients; (b) requiring plaintiff to work with patients after normal business hours without any compensation; (c) requiring plaintiff to prepare treatment

notes after normal business hours without any compensation; and (d) not allowing for lunch or other breaks during the work day.

68.     Plaintiff notified defendant Grandison Management that she intended to terminate the employment contract for cause if the material breaches were not cured in full within 30 days.

69.     More than 30 days passed since defendant Grandison Management received plaintiff's notice of material breaches of the employment contract and demand for cure.

70.     Plaintiff agreed to extend the 30-day deadline.

71.     Defendant Grandison Management did not cure its breaches of the employment contract before the extended deadline expired.

**E.  Defendant Grandison Management Used Threats of Serious Harm to Obtain and Provide Plaintiff's Labor and Services**

72.     Notwithstanding defendant Grandison Management's material breaches of the contract and failure to cure after written notice, plaintiff continued to work for the defendants because defendant Grandison Management threatened her with serious harm if she tried to stop working.

73.     Defendant Grandison Management threatened to sue plaintiff for "liquidated damages" if she stopped working for the defendants.

74.     The purported basis for defendant Grandison Management's claim is a $30,000 indenture in the employment contract.

75.     Plaintiff reasonably feared that defendant Grandison Management would sue her to recover more than $30,000 under the indenture in the employment contract.

76.     The purpose and effect of the $30,000.00 indenture is not to compensate defendant Grandison Management for actual or potential damages.

77.     The purpose and effect of the $30,000.00 indenture is to obtain and provide plaintiff's labor and services to Grandison Management and its clients.

78.     The purpose and effect of the $30,000 indenture is to obtain and provide plaintiff's labor and services to Grandison Management and its clients, even when she is not being paid the legally required wages.

79.     The purpose and effect of the $30,000.00 indenture is to obtain and provide plaintiff's labor and services to Grandison Management and its clients, even when her employers pressure her to provide sub-standard care to an excessive number of patients.

80.     The purpose and effect of the $30,000.00 indenture is to obtain and provide plaintiff's labor and services to Grandison Management and its clients, even when her employers pressure her to use billing forms that do not accurately reflect the amount of time she spends with an individual patient.

81.     Defendant Grandison Management is able to calculate with reasonable certainty the amount of actual damages it would suffer in the event plaintiff breached the employment contract.

82.     The amount of so-called "liquidated damages" in the employment contract is disproportionate to defendant Grandison Management's actual or potential damages.

83.     The amount of the so-called "liquidated damages" in the employment contract is disproportionate to the wages paid to plaintiff.

84.     Plaintiff reasonably feared that defendant Grandison Management would sue her for breach of a non-compete clause in the employment contract if she tried to practice her profession with any other employer in the United States.

85.    The employment contract states that Grandison Management provides healthcare professionals "in hospitals, nursing homes, and other healthcare settings (each, a 'Client') throughout the United States."

86.    A non-compete provision in the employment contract purports to prohibit plaintiff from becoming "an employee, contractor, consultant or otherwise work[ing] for any hospital, nursing home, medical clinic, home health-care agency or other healthcare facility within a 25-mile radius of any Client" of Grandison Management "for a period of two years following the date of the Employee's termination for any reason."

87.    The non-compete provision purports to prohibit plaintiff from becoming "an employee, contractor, consultant or otherwise work[ing] for or be[ing] associated with any healthcare recruitment and/or staffing firm or any person, firm, partnership, company or any entity that performs the same or similar services as the Employer in any geographic area where the Employer provides services."

88.    The temporal, geographic, and substantive scope of the non-compete provisions create an unreasonable restraint on plaintiff's ability to practice her profession.

89.    The temporal, geographic, and substantive scope of the non-compete provisions are broader than necessary to protect any legitimate business interest of Grandison Management.

90.    The purpose and effect of the non-compete provisions are not to protect any legitimate business interest of Grandison Management.

91.    The purpose and effect of the non-compete provisions are to obtain and provide plaintiff's labor and services to Grandison Management and its clients.

92.     The purpose and effect of the non-compete provisions are to obtain and provide plaintiff's labor and services to Grandison Management and its clients, even when she is not being paid the wages required under the employment contract.

93.     The purpose and effect of the non-compete provisions are to obtain and provide plaintiff's labor and services, even when her employers pressure her to provide sub-standard care to an excessive number of patients.

94.     The purpose and effect of the non-compete provisions are to obtain and provide plaintiff's labor and services, even when her employers pressure her to use forms that do not accurately reflect the amount of time she spends with an individual patient.

95.     The so-called "liquidated damages" clause and non-compete provisions are part of a contract of adhesion that defendant Grandison Management obtained as a result of unequal sophistication and bargaining power.

96.     Plaintiff reasonably fears that potential employers will not hire her as long as defendant Grandison Management is suing or threatening to sue her for violation of the two-year, nationwide non-compete provision in the employment contract.

97.     Plaintiff reasonably fears that the cost of defending herself against defendant Grandison Management's threatened legal actions will cause her to suffer serious harm.

**F. Defendant Grandison Management Retaliated Against Plaintiff
for Complaining About Unpaid Wages, Sub-Standard Patient Care,
and False Claims to Medicare and Medicaid**

98.     During her initial orientation with Grandison Management in November 2017, plaintiff advised the company that she wanted to take time off almost one year later, in October 2018, for her wedding in the Philippines.

14

99.     Plaintiff informed defendant Grandison Management that the locations for the wedding and reception had to be reserved at least 15 months in advance.

100.    A Grandison Management representative told plaintiff to make the request three months before the date of her requested leave.  No one at Grandison Management indicated that there would be any problem with her request.

101.    On June 1, 2018, plaintiff submitted a written request to Grandison Management for time off to attend her wedding in the Philippines from September 28, 2018 to October 12, 2018.  Plaintiff explained in her written request that the church where the wedding will be held and the hotel where the reception will be held had to be booked at least 15 months in advance.

102.    After plaintiff complained about the excessive number of patients, the false billing, and the failure to pay her any compensation for off-the-clock hours, defendant Grandison Management refused to approve her request for time off to attend her own wedding.

103.    Upon information and belief, defendant Grandison Management refused to approve plaintiff's request for time off for her wedding because of the complaints she raised about unpaid wages, sub-standard patient care, and false billing to Medicare and Medicaid.

104.    Upon information and belief, defendant Grandison Management refused to approve plaintiff's request for time off to attend her wedding in order to coerce plaintiff into dropping her allegations of unpaid wages, sub-standard patient care, and false billing to Medicare and Medicaid.

105.    After plaintiff complained about the excessive number of patients, the false billing, and the failure to pay her any compensation for off-the-clock hours, defendant Grandison Management threatened plaintiff that she could be transferred to an isolated location in Upstate

New York, far from her fiancé, if she did not continue working for the defendants where she is currently assigned.

106.    Upon information and belief, defendant Grandison Management threatened that plaintiff could be transferred to an isolated location in Upstate New York, far from her fiancé, because of the complaints she has raised about unpaid wages, sub-standard patient care, and false billing to Medicare and Medicaid.

107.    Upon information and belief, defendant Grandison Management threatened that plaintiff could be transferred to an isolated location in Upstate New York, far from her fiancé, in order to coerce plaintiff into dropping her allegations of unpaid wages, sub-standard patient care, and false billing to Medicare and Medicaid.

**Class Action Claims**

108.    Defendants' conduct described above was part of and resulted from policies and practices that the defendants applied to all healthcare workers who worked for defendant Grandison Management under employment contracts containing non-compete and so-called $30,000 "liquidated damages" clauses.  Plaintiff therefore brings the TVPA and declaratory judgment claims alleged herein as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

109.    The class is comprised of all healthcare workers who worked for defendant Grandison Management under employment contracts containing non-compete and so-called $30,000 "liquidated damages" clauses at any time since August 10, 2008.

110.    The claims of the class are properly brought as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the defendants have acted or refused to

act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

111.    The claims of the class are properly brought as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure for the following reasons:

a.   Numerosity:  The potential members of the class are so numerous that joinder of all members of the class is impracticable.

b.   Commonality:  Questions of law and fact common to plaintiff and the class predominate over any questions affecting only individual members of the class, including:

i.   whether defendant Grandison Management engaged in a policy or practice of threatening to enforce the so-called "liquidated damages" and/or non-compete clauses;

ii.   whether the so-called "liquidated damages" clause is an unenforceable penalty;

iii.   whether the purpose of the so-called "liquidated damages" clause are not to compensate defendant Grandison Management for actual or potential damages;

iv.   whether the purpose and effect of the so-called "liquidated damages" clause are to obtain and provide the labor and services of class members to Grandison Management and its clients;

v.   whether the amount of the so-called "liquidated damages" clause constitutes "serious harm" within the meaning of the Trafficking Victims Protection Act;

   vi.  whether potential enforcement of the "liquidated damages" clause constitutes a threat of "serious harm" within the meaning of the Trafficking Victims Protection Act;

  vii.  whether the threat of serious harm from enforcement of the so-called "liquidated damages" clause would compel a reasonable person of the same background and in the same circumstances as plaintiff to perform or to continue performing labor or services in order to avoid incurring that harm;

 viii.  whether the purpose and effect of the non-compete provisions in defendant Grandison Management's standard employment contract are not to protect any legitimate business interest;

   ix.  whether the purpose and effect of the non-compete provisions are to obtain and provide the labor and services of class members to Grandison Management and its clients;

   x.  whether the substantive, temporal, and geographic scope of the non-compete provisions constitute "serious harm" within the meaning of the Trafficking Victims Protection Act;

  xi.  whether potential enforcement of the non-compete clauses constitutes a threat of serious harm;

  xii.  whether the threat of serious harm from enforcement of the non-compete clauses would compel a reasonable person of the same background and in the same circumstances as plaintiff to perform or to continue performing labor or services in order to avoid incurring that harm;

xiii. whether defendant Grandison Management abused or threatened to abuse law or legal process in order to exert pressure on class members to continue working for it;

xiv. whether defendant Grandison Management knowingly provided and obtained the labor and services of plaintiff and members of the class by means of threats or serious harm or abusive legal proceedings;

xv. whether defendants knowingly benefitted, financially and by receiving other value, from participation in a venture that provided and obtained the labor and services of plaintiff and other class members by means of violations of the Trafficking Victims Protection Act;

xvi. whether defendants attempted to violate the Trafficking Victims Protection Act;

xvii. whether judicial enforcement of the so-called "liquidated damages" and non-compete clauses would violate the Trafficking Victims Protection Act;

xviii. whether judicial enforcement of the so-called "liquidated damages" and non-compete clauses would violate the 13th Amendment to the United States Constitution;

xix. whether judicial enforcement of the so-called "liquidated damages" and non-compete clauses would violate the Anti-Peonage Statute;

xx. whether judicial enforcement of the so-called "liquidated damages" and non-compete clauses would violate New York law;

xxi. whether defendants are liable to the class;

xxii.   whether the class can be made whole by payment of damages.

c.   Typicality:  Plaintiff's claims are typical of the claims of the class.  Plaintiff and all members of the class sustained injuries and damages arising out of and proximately caused by the policies and practices described above.

d.   Adequacy of Representation:  Plaintiff will fairly and adequately represent the interests of class members.  Plaintiff's attorney is competent and experienced in litigating complex employment class actions.

e.   Superiority:  A class action is superior to other available means for fair and efficient adjudication of this controversy.  Each class member has been damaged and is entitled to recovery because of defendants' illegal policies and practices.  Individual joinder of all class members is not practicable, and questions of law and fact common to the class predominate over any questions affecting only individual members of the class.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

**FIRST CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR**
**FAILURE TO PAY OVERTIME WAGES**
**IN VIOLATION OF THE FAIR LABOR STANDARDS ACT**

112.   Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 111 above as if fully restated herein.

113.   The defendants have regulated the employment of the plaintiff and all other persons employed by them, acted directly and indirectly in their own interest in relation to the employees, and are thus employers of plaintiff and their other employees within the meaning of section 3(d) of the Fair Labor Standards Act ("FLSA").

114.     Each defendant has employed employees at their places of business in activities of an enterprise engaged in commerce.  Upon information and belief, defendants have had an annual gross volume of sales made or business done in an amount not less than $500,000.00. Therefore plaintiff was at all relevant times employed in an enterprise engaged in commerce within the meaning of section 3(s)(1)(A) of the FLSA.

115.     Defendants willfully and repeatedly violated the provisions of sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 206 and 215, by employing plaintiff in an enterprise engaged in commerce, for workweeks longer than those prescribed in section 7 of the FLSA, and without compensating her for employment in excess of the prescribed hours at rates not less than one and one-half times the regular rates at which she was employed.

116.     Defendants are jointly and severally liable to plaintiff for unpaid overtime compensation together with an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid overtime compensation together with prejudgment interest on said unpaid overtime compensation.

**SECOND CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS FOR**
**FAILURE TO PAY OVERTIME WAGES**
**IN VIOLATION OF THE NEW YORK LABOR LAW**

117.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 116 above as if fully restated herein.

118.     Defendants' failure to pay plaintiff for all hours worked violated New York Labor Law § 650, *et seq.* and 12 N.Y.C.R.R. § 142-2.2.

119.     Defendants' failure to pay plaintiff the proper overtime compensation violated New York Labor Law § 650, *et seq.* and 12 N.Y.C.R.R. § 142-2.2.

120.    Defendants' failure to pay plaintiff the proper overtime compensation and for all hours worked was intentional.

121.    Defendants are jointly and severally liable to plaintiff for unpaid overtime wages together with an equal amount in liquidated damages or, in the event liquidated damages are not awarded, unpaid overtime compensation together with prejudgment interest on said unpaid overtime compensation.

## THIRD CLAIM FOR RELIEF AGAINST
## DEFENDANT GRANDISON MANAGEMENT
## FOR BREACH OF CONTRACT

122.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 121 above as if fully restated herein.

123.    Plaintiff entered into a valid and binding employment contract with defendant Grandison Management.

124.    Plaintiff substantially performed under the contract.

125.    Defendant Grandison Management breached the contract by failing to pay plaintiff the wages promised in her employment contract for all hours worked.

126.    Plaintiff suffered damages as a direct and proximate result of the breach.

127.    Plaintiff is entitled to compensatory damages for breach of contract in amounts to be determined at trial.

## FOURTH CLAIM FOR RELIEF AGAINST
## DEFENDANT GRANDISON MANAGEMENT
## FOR UNLAWFUL RETALIATION
## IN VIOLATION OF THE NEW YORK LABOR LAW

128.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 127 above as if fully restated herein.

129.     Plaintiff complained to defendant Grandison Management that it had violated the New York Labor Law by failing to pay regular and overtime wages for all the hours she worked.

130.     Defendant Grandison Management took adverse employment action against plaintiff because she complained that it had violated the New York Labor Law by failing to pay regular and overtime wages for all the hours she worked.

131.     Plaintiff suffered damages as a direct and proximate result of defendant Grandison Management's conduct.

132.     Plaintiff is entitled to compensatory and punitive damages.

**FIFTH CLAIM FOR RELIEF AGAINST
DEFENDANT GRANDISON MANAGEMENT
FOR UNLAWFUL RETALIATION
IN VIOLATION OF THE FEDERAL FALSE CLAIMS ACT**

133.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 132 above as if fully restated herein.

134.     Plaintiff engaged in conduct protected by the federal False Claims Act, 31 U.S.C. 3729, *et seq*.

135.     Defendant Grandison Management was aware that plaintiff engaged in conduct protected by the federal False Claims Act.

136.     Defendant Grandison Management took adverse employment action against plaintiff because she engaged in conduct protected by the federal False Claims Act.

137.     Plaintiff suffered damages as a direct and proximate result of defendant Grandison Management's conduct.

138.     Plaintiff is entitled to compensatory and punitive damages.

**SIXTH CLAIM FOR RELIEF AGAINST**
**DEFENDANT GRANDISON MANAGEMENT**
**FOR UNLAWFUL RETALIATION IN VIOLATION OF**
**THE NEW YORK STATE FALSE CLAIMS ACT**

139.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 138 above as if fully restated herein.

140.    Plaintiff engaged in conduct protected by the New York False Claims Act, N.Y. Fin. L. §§ 187, *et seq.*

141.    Defendant Grandison Management was aware that plaintiff engaged in conduct protected by the New York False Claims Act.

142.    Defendant Grandison Management took adverse employment action against plaintiff because she engaged in conduct protected by the New York False Claims Act.

143.    Plaintiff suffered damages as a direct and proximate result of the defendant Grandison Management's conduct.

144.    Plaintiff is entitled to compensatory and punitive damages.

**SEVENTH CLAIM FOR RELIEF AGAINST**
**ALL DEFENDANTS FOR VIOLATIONS OF**
**THE TRAFFICKING VICTIMS PROTECTION ACT**

145.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 144 above as if fully restated herein.

146.    The Trafficking Victims Protection Act, 18 U.S.C. § 1989, prohibits the use of threats of serious harm to provide or obtain the labor or services of a person.

147.    The Act defines a threat of serious harm to include any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background

24

and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

148.    The Trafficking Victims Protection Act, 18 U.S.C. § 1989, prohibits the abuse or threatened abuse of law or legal process to provide or obtain the labor or services of a person.

149.    The Act defines abuse or threatened abuse of law or legal process to include the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

150.    Defendant Grandison Management knowingly provided and obtained the labor and services of plaintiff and members of the class by means of threats of serious harm to plaintiff and others, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

151.    Defendant Grandison Management knowingly provided and obtained the labor and services of plaintiff and members of the class by means of a scheme, plan, or pattern intended to cause them to believe that, if they did not perform such labor or services, they would suffer serious harm, including without limitation psychological, financial, or reputational harm that was sufficiently serious to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

152.    Defendant Grandison Management's threats to commence legal action against plaintiff and members of the class to enforce the penalty and non-compete provisions of the

employment contract were and are designed to exert pressure on plaintiff and members of the class to cause them to continue working for the defendants and refrain from leaving their employ.

153.    Plaintiff and members of the class have been compelled to perform and to continue performing labor or services for defendant Grandison Management in order to avoid incurring serious harm and abuse of law or legal process.

154.    Defendant Grandison Management knowingly recruited, transported, provided, and obtained plaintiff and members of the class for labor or services in violation of 18 U.S.C. §§ 1589 and 1590.

155.    Defendants Mr. Lopez and Rehab Synergy knowingly benefitted, financially and by receiving other value, from participation in a venture with defendant Grandison Management that provided and obtained the labor and services of plaintiff and members of the class by means of violations of the Trafficking Victims Protection Act.

156.    By reason of the conduct described above, defendants were perpetrators of violations of 18 U.S.C. §§ 1589 and 1590.

157.    Plaintiff and members of the class suffered damages as a direct and proximate result of the defendants' conduct.

158.    Plaintiff and members of the class are entitled to compensatory and punitive damages in amounts to be determined at trial.

### EIGHTH CLAIM FOR RELIEF AGAINST
### ALL DEFENDANTS FOR ATTEMPTED VIOLATIONS
### OF THE TRAFFICKING VICTIMS PROTECTION ACT

159.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 158 above as if fully restated herein.

160.    Defendant Grandison Management attempted to violate 18 U.S.C. §§ 1589 and 1590.

161.    Plaintiff and members of the class suffered damages as a direct and proximate result of defendant Grandison Management's attempts to violate 18 U.S.C. §§ 1589 and 1590.

162.    Defendants Mr. Lopez and Rehab Synergy knowingly benefitted, financially and by receiving other value, from participation in a venture with defendant Grandison Management that provided and obtained the labor and services of plaintiff and members of the class by means of attempted violations of the Trafficking Victims Protection Act.

163.    Plaintiff and members of the class are entitled to compensatory and punitive damages in amounts to be determined at trial.

### NINTH CLAIM FOR RELIEF AGAINST DEFENDANT GRANDISON MANAGEMENT FOR A DECLARATORY JUDGMENT THAT THE PENALTY AND NON-COMPETE PROVISIONS OF THE EMPLOYMENT CONTRACT VIOLATE THE TRAFFICKING VICTIMS PROTECTION ACT

164.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 163 above as if fully restated herein.

165.    Defendant Grandison Management's threats to enforce the so-called "liquidated damages" clause and non-compete provisions of the employment contract constitute threats of serious harm within the meaning of the Trafficking Victims Protection Act.

166.    Plaintiff and members of the class have been compelled to perform and to continue performing labor or services for defendant Grandison Management in order to avoid incurring that harm.

167.    Defendant Grandison Management's threats to commence legal action against plaintiff and members of the class to enforce the penalty and non-compete provisions of the

employment contract were and are designed to cause them to continue working for the defendants and refrain from leaving their employ notwithstanding their failure to pay plaintiff and members of the class the legally required compensation.

168.    Plaintiff and members of the class have been compelled to perform and to continue performing labor or services for defendant Grandison Management as a result of its threats.

169.    Plaintiff and members of the class have a definite and concrete dispute with defendant Grandison Management concerning the enforceability of the so-called "liquidated damages" clause and non-compete provision in the employment contract.

170.    The dispute touches the legal relations of parties having adverse legal interests.

171.    The dispute is real and substantial.

172.    The dispute admits of specific relief through a decree of a conclusive character.

173.    The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**TENTH CLAIM FOR RELIEF AGAINST
DEFENDANT GRANDISON MANAGEMENT FOR
A DECLARATORY JUDGMENT THAT JUDICIAL ENFORCEMENT OF
THE PENALTY AND NON-COMPETE PROVISIONS
OF THE EMPLOYMENT CONTRACT
WOULD VIOLATE THE 13th AMENDMENT**

174.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 173 above as if fully restated herein.

175.    The 13th Amendment to the United States Constitution provides that involuntary servitude shall not exist within the United States or any place subject to their jurisdiction.

176.     The so-called "liquidated damages" clause and non-compete provisions in the employment contract are intended to keep plaintiff and members of the class in a position of involuntary servitude.

177.     The so-called "liquidated damages" clause and non-compete provisions in the employment contract have the effect of keeping plaintiff members of the class in a position of involuntary servitude.

178.     A Court may not use its legal authority and power to enforce so-called "liquidated damages" clauses and non-compete provisions in an employment contract that have the purpose and effect of keeping plaintiff and members of the class in a position of involuntary servitude.

179.     Plaintiff and members of the class have a definite and concrete dispute with defendant Grandison Management concerning the enforceability of the so-called "liquidated damages" clause and non-compete provisions in the employment contract.

180.     The dispute touches the legal relations of parties having adverse legal interests.

181.     The dispute is real and substantial.

182.     The dispute admits of specific relief through a decree of a conclusive character.

183.     The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

184.     Plaintiff and members of the class are entitled to a judicial declaration that judicial enforcement of the so-called "liquidated damages" clause and non-compete provisions would violate the 13th Amendment to the United States Constitution,

29

**ELEVENTH CLAIM FOR RELIEF AGAINST**
**DEFENDANT GRANDISON MANAGEMENT FOR**
**A DECLARATORY JUDGMENT THAT JUDICIAL ENFORCEMENT OF**
**THE PENALTY PROVISION OF THE EMPLOYMENT CONTRACT**
**WOULD VIOLATE THE ANTI-PEONAGE STATUTE**

185.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 184 above as if fully restated herein.

186.    The Anti-Peonage Statute, 42 U.S.C. § 1994, prohibits any attempt to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation.

187.    The so-called "liquidated damages" clause in the employment contract is intended to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of plaintiff and members of the class as peons, in liquidation of a debt or obligation.

188.    The so-called "liquidated damages" clause in the employment contract has the effect of establishing, maintaining, or enforcing, directly or indirectly, the voluntary or involuntary service or labor of plaintiff and members of the class as peons, in liquidation of a debt or obligation.

189.    A Court may not use its legal authority and power to enforce a so-called "liquidated damages" clause in an employment contract that has the purpose and effect of establishing, maintaining, or enforcing, directly or indirectly, the voluntary or involuntary service or labor of plaintiff and members of the class as peons, in liquidation of a debt or obligation.

190.    Plaintiff and members of the class have a definite and concrete dispute with defendant Grandison Management concerning the enforceability of the so-called "liquidated damages" clause in the employment contract.

191.     The dispute touches the legal relations of parties having adverse legal interests.

192.     The dispute is real and substantial.

193.     The dispute admits of specific relief through a decree of a conclusive character.

194.     The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

195.     Plaintiff and members of the class are entitled to a judicial declaration that judicial enforcement of the so-called "liquidated damages" clause would violate the Anti-Peonage Statute, 42 U.S.C. § 1994.

**TWELFTH CLAIM FOR RELIEF AGAINST
DEFENDANT GRANDISON MANAGEMENT FOR
A DECLARATORY JUDGMENT THAT THE PENALTY
PROVISION OF THE EMPLOYMENT CONTRACT
IS UNENFORCEABLE UNDER NEW YORK LAW**

196.     Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 195 above as if fully restated herein.

197.     The so-called "liquidated damages" clause in the employment contract is an unenforceable penalty.

198.     The amount of the so-called "liquidated damages" is disproportionate to defendant Grandison Management's foreseeable or probable losses.

199.     Defendant Grandison Management's actual damages caused by a breach of the employment contract are and were readily ascertainable.

200.     The amount of the so-called "liquidated damages" is disproportionate to the compensation of plaintiff and other class members.

201.     The purpose and effect of the so-called "liquidated damages" clause is to coerce plaintiff and other class members into continuing to work for defendant Grandison Management.

31

202.    The so-called "liquidated damages" clause was the result of unequal bargaining power and a contract of adhesion.

203.    Plaintiff and other class members have a definite and concrete dispute with defendant Grandison Management concerning the enforceability of the so-called "liquidated damages" clause in the employment contract.

204.    The dispute touches the legal relations of parties having adverse legal interests.

205.    The dispute is real and substantial.

206.    The dispute admits of specific relief through a decree of a conclusive character.

207.    The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**THIRTEENTH CLAIM FOR RELIEF AGAINST
DEFENDANT GRANDISON MANAGEMENT FOR
A DECLARATORY JUDGMENT THAT THE NON-COMPETE
PROVISION OF THE EMPLOYMENT CONTRACT
IS UNENFORCEABLE UNDER NEW YORK LAW**

208.    Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 207 above as if fully restated herein.

209.    The duration and geographic scope of the non-compete provisions in the employment contract are broader than necessary to protect any legitimate business interests of defendant Grandison Management.

210.    The duration and geographic scope of the non-compete provisions in the employment contract are not necessary to prevent possible solicitation or disclosure of trade secrets.

211.    The duration and geographic scope of the non-compete provisions in the employment contract are not necessary to prevent possible release of confidential information regarding defendant Grandison Management's customers.

212.    The duration and geographic scope of the non-compete provisions in the employment contract impose unreasonable burdens on and barriers to the ability of plaintiff and members of the class to practice their professions and earn an income.

213.    The geographic scope of the non-compete provisions of the employment contract is unreasonably ambiguous and indefinite.

214.    The duration and geographic scope of the non-compete provisions in the employment contract are contrary to the State of New York's strong public policy in favor of competition engendered by the uninhibited flow of services, talent, and ideas.

215.    The duration and scope of the non-compete provisions in the employment contract are contrary to the State of New York's strong public policy in favor of allowing employees to apply to their own best advantage the skills and knowledge acquired by the overall experience of their previous employment.

216.    The duration and scope of the non-compete provisions in the employment contract are unsupported by continued consideration for plaintiff's loyalty and good will.

217.    The duration and geographic scope of the non-compete provisions in the employment contract are designed for improper purposes, including to coerce plaintiff and other members of the class into continuing to work for defendant Grandison Management.

218.    Plaintiff and other members of the class have a definite and concrete dispute with defendant Grandison Management concerning the enforceability of the non-compete provisions in the employment contract.

219.    The dispute touches the legal relations of parties having adverse legal interests.

220.    The dispute is real and substantial.

221.    The dispute admits of specific relief through a decree of a conclusive character.

222.    The dispute involves a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## Jury Demand

223.    Plaintiff is entitled to and demands a jury trial.

## Prayer for Relief

WHEREFORE plaintiff Maria Nerisa Caringal Magbojos requests entry of judgment:

(a)  against defendant Grandison Management, Inc. declaring that the so-called "liquidated damages" and non-compete provisions in the employment contract are unenforceable under the Trafficking Victims Protection Act, 18 U.S.C. § 1589, *et seq.*, the 13th Amendment to the United States Constitution, the Anti-Peonage Statute, 42 U.S.C. § 1994, and New York common law; and permanently enjoining defendant Grandison Management, Inc. from enforcing or threatening to enforce the so-called "liquidated damages" and non-compete provisions in the employment contract against plaintiff or any other class member in any forum;

(b)  against all defendants, jointly and severally, awarding plaintiff and members of the class compensatory and punitive damages for violations of the Trafficking Victims Protection Act;

(c)  against all defendants, jointly and severally, awarding plaintiff compensatory and liquidated damages for failure to pay overtime compensation for all hours worked in violation of the Fair Labor Standards Act and the New York Labor Law;

(d) against defendant Grandison Management, Inc. awarding plaintiff compensatory and

    punitive damages for violations of the anti-retaliation provisions of the federal False

    Claims Act, the New York False Claims Act, and the New York Labor Law, and

    compensatory damages for breach of contract;

(e) against all defendants, jointly and severally, awarding plaintiff reasonable attorneys'

    fees and the costs of this action as authorized by 18 U.S.C. § 1595(a), 31 U.S.C.

    §3730(h)(2), 29 U.S.C. § 216, New York Finance Law § 191, New York Labor Law

    § 190, and the employment contract; and

(f) granting such other and further relief as this Court deems just and proper.

Dated: New York, New York               THE HOWLEY LAW FIRM P.C.
       August 10, 2018

                                     By: _____

                                     John Howley
                                 *Attorneys for Plaintiff*
                                   350 Fifth Avenue, 59th Floor
                                   New York, New York  10118
                                   (212) 601-2728